# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ATTORNEY FOR PLAINTIFF:
Law Office of Edward E. Kopko
Edward E. Kopko, Eastern District of Pa. Atty. Reg. No. 25582
15 Nottingham Drive
Ithaca, New York 14850
607-269-1300; 607-269-1301
eek@kopkolaw.com

**PLAINTIFF:**
PASQUALE SCARAMUZZA

V.

**DEFENDANTS:**
ANTHONY J. SCIOLLA, JR. and JAFFE, FRIEDMAN, SCHUMAN, SCIOLLA, & APPLEBAUM, P.C.

**NO. 2004-CV-_____**
**JURY TRIAL DEMANDED**

## COMPLAINT

The plaintiff, Pasquale Scaramuzza (Scaramuzza), by and through his attorney, Edward E. Kopko, complains against the defendants, Anthony J. Sciolla, Jr. (Sciolla) and Jaffe, Friedman, Schuman, Sciolla, & Appelbaum, P.C., (Jaffe Friedman) upon a cause of action stated as follows:

### DIVERSITY JURISDICTION

Scaramuzza invokes the diversity jurisdiction of this Court pursuant to 28 U.S.C. § 1332. Scaramuzza is a resident of Florida and Sciolla and the Jaffe Friedman are residents of Pennsylvania. The principal amount in controversy is $477, 556.12.

### VENUE

All of the acts complained of occurred in Montgomery County, Pennsylvania, which is located in the Eastern District of Pennsylvania.

FACTS COMMON TO ALL COUNTS

1. Scaramuzza is an adult individual and a resident of the State of Florida.

2. Sciolla is an adult individual licensed by the Supreme Court of Pennsylvania to practice law in the Commonwealth of Pennsylvania.

3. Jaffe, Friedman, Schuman, Sciolla, & Appelbaum, P.C., (Jaffe Friedman) is a professional corporation of lawyers organized and existing under the laws of the Commonwealth of Pennsylvania and Jaffe Friedman regularly conducts business at Suite 200, 7848 Old York Road, Elkins Park, Pennsylvania 19027.

4. At all times relevant to the allegations contained in this complaint, Sciolla was an employee, director, officer, or shareholder of Jaffe Friedman working within the scope of his employment and with the knowledge and consent of Jaffe Friedman.

5. On or about February 12, 2002, Scaramuzza, as client, and Sciolla and Jaffe Friedman, as attorney, entered into an attorney client relationship by which Sciolla and Jaffe Friedman undertook to represent Scaramuzza in the case of "Lincoln General Insurance Company v. Personal Surplus Lines, Inc. and Pasquale Scaramuzza," (Lincoln General Litigation) then pending in the Court of Common Pleas, Montgomery County, Pennsylvania, Docket No. 98-02859.  A copy of the written attorney employment agreement is attached as Exhibit One. (Appendix p. 2-3)   A copy of the amended complaint filed Lincoln General Litigation, together with exhibits to the complaint, is attached as Exhibit Two. (Appendix p. 4-33)

6. In the Lincoln General Litigation, the plaintiff, Lincoln General Insurance Company, alleged as follows:

> 5.   On May 30, 1995, Lincoln General entered into a "Brokerage Agreement " with Personal Surplus whereby Personal Surplus

agreed to solicit business and bind risks for Lincoln General's private passenger automobile physical damage line of business in all states where Lincoln General was licensed to write such insurance, including Pennsylvania. The "Brokerage Agreement" was entered into and signed by Lincoln General at is office in York, Pa. The "Brokerage Agreement" was not effective until signed by Lincoln General. A true and correct copy of the "Brokerage Agreement" is attached hereto as Exhibit 'A' and incorporated herein by reference. (Appendix p. 16-21)

6. Under Paragraph 3(b) of the "Brokerage Agreement," Personal Surplus was responsible for collecting, accounting for, and paying all premiums on the insurance business that it wrote for Lincoln General, even if it did not collect the premium from the policy holder. As stated in Paragraph 3(b)(3), premiums collected by Personal Surplus were the property of Lincoln General, and Personal Surplus held such premiums as a trustee for Lincoln General.

7. Under the "Addendum" to the "Brokerage Agreement". effective August 1, 1996, Personal Surplus could only be relieved of its responsibility to pay premiums to Lincoln General if Personal Surplus notified Lincoln General with 30 days of the premium billing that it was unable to collect such premiums. A true and correct copy of the Addendum is attached hereto as Exhibit "B" and incorporated herein by reference. (Appendix p. 27)

8. Personal Surplus' binding authority in accordance with the Brokerage Agreement was $30,000 or less per unit. A true and correct copy of the letter dated May 30, 1995, setting forth the binding authority limit is attached hereto as Exhibit "C" and incorporated herein by reference. (Appendix p. 28)

9. Additionally, on May 30, 1995, as an inducement to Lincoln General to enter into the "Brokerage Agreement", Personal Surplus

>agreed to guarantee the full performance by Scaramuzza of all terms and conditions of the Brokerage Agreement. A true and correct copy of the "Guaranty" is attached hereto as Exhibit "D" and incorporated herein by reference. (Appendix p. 29-33)

7. Scaramuzza signed Exhibit "A" to the complaint in the Lincoln General Litigation as an officer of Personal Surplus Lines, Inc. and not as an individual. (Appendix p. 21)

8. Scaramuzza signed Exhibit "B" to the complaint in the Lincoln General Litigation as an officer of Personal Surplus Lines, Inc. and not as an individual. (Appendix p. 27)

9. Scaramuzza signed Exhibit "C" to the complaint in the Lincoln General Litigation as an officer of Personal Surplus Lines, Inc. and not as an individual. (Appendix p. 28)

10. Scaramuzza signed Exhibit "D" to the complaint in the Lincoln General Litigation as an officer of Personal Surplus Lines, Inc. and not as an individual. (Appendix p. 32)

11. Scaramuzza is not a party to Exhibit "A" to the complaint in the Lincoln General Litigation. (Appendix p. 16)

12. Scaramuzza is not a party to Exhibit "B" to the complaint in the Lincoln General Litigation. (Appendix p. 27)

13. Scaramuzza is not a party to Exhibit "C" to the complaint in the Lincoln General Litigation. (Appendix p. 28)

14. Scaramuzza is not a party to Exhibit "D" to the complaint in the Lincoln General Litigation. (Appendix p. 32)

15. In the Lincoln General Litigation complaint, Lincoln General does not alleged that Scaramuzza is a party to Exhibits A, B, C, and D to the complaint.

16. In the Lincoln General Litigation, Exhibits A, B, C, and D to the complaint constitute a written or express agreement between Lincoln General Insurance Company and Personal

Surplus Lines, Inc. upon which Lincoln General sought to recover a debt from Personal Surplus Lines, Inc.

17. In the Lincoln General Litigation complaint, Exhibit Two, only Counts III and V contain allegations of personal liability of Scaramuzza.

18. In the Lincoln General Litigation, the plaintiff, Lincoln General Insurance Company, alleged in Count III as follows:

COUNT III

LINCOLN GENERAL v. SCARAMUZZA

BREACH OF FIDUCIARY DUTY

26. Lincoln General incorporates by reference herein Paragraphs 1 through 25 of this Complaint.

27. In his capacity of licensed insurance broker and/or agent, Scaramuzza solicited and obtained private passenger automobile physical damage insurance and placed it with Lincoln General.

28. Under Pennsylvania Law, Scaramuzza owed a fiduciary duty to Lincoln General with respect to the premiums for the business that he obtained for Lincoln General.

29. In breach of his fiduciary duty, Scaramuzza failed or refused to hold unearned premiums in trust or to return unearned premiums to insurance premium finance companies.

30. Scaramuzza acted in breach of his fiduciary duty with full knowledge of the consequences and effects of Lincoln General. Upon information and belief, Scaramuzza failed to return unearned premiums in order to take advantage of the interest on the return on the unreturned money which he retained.

31. Scaramuzza refused to return the unearned premiums maliciously, without any justifiable cause, and with the intent to harm Lincoln General.

32. As a result of Scaramuzza's breach of his fiduciary duty,

> Lincoln General is entitled to recover from Scaramuzza as compensatory damages, the amount withheld unearned premiums of $361,822.56, plus interest. Since his breach of fiduciary duty was malicious and unlawful, Lincoln General is also entitled to an award of punitive damages in excess of $500,000, and the attorneys' fees incurred by Lincoln in this action.
>
> Wherefore, Plaintiff, Lincoln General Insurance Company, demands the entry of judgment against Defendant, Pasquale Scaramuzza, and the award of compensatory damages of $361,822.56, punitive damages in excess of $500,000, attorneys' fees, prejudgment interest, and the costs of this action.

19. In the Lincoln General Litigation, the plaintiff, Lincoln General Insurance Company, alleged in Count V as follows:

> ### COUNT V
> ### LINCOLN GENERAL v. PERSONAL SURPLUS AND SCARAMUZZA—UNJUST ENRICHMENT
>
> 38. Lincoln General incorporates by reference herein Paragraphs 1 through 37 of this Complaint.
>
> 39. Personal Surplus and Scaramuzza, acting jointly and severally, have been unjustly enriched by wrongfully withholding gross unearned insurance premiums which, by law, belong to insurance premium companies.
>
> 40. Personal Surplus and Scaramuzza are not entitled to retain those gross unearned premiums or the interest that has been earned on that money during the period of their unlawful withholding.
>
> 41 Lincoln General is entitled to recover all amounts which Personal Surplus and Scaramuzza have improperly withheld, plus prejudgment interest and attorney's fees.
>
> Wherefore, Plaintiff, Lincoln General Insurance Company,

> demands the entry of judgment against Defendant, Pasquale Scaramuzza, and the award of compensatory damages of $361,822.56, prejudgment interest, attorneys' fees, and the costs of this action.

20. On February 24, 2003, the Lincoln General Litigation was tried before the Court of Common Pleas of Montgomery County, Pennsylvania. A copy of the transcript of the trial, including the plaintiff's and the defendant's trial exhibits, is attached as Exhibit Three. (Appendix p. 34-203)

21. During the trial of the Lincoln General Litigation, the Court stated:

> At this point, it's the Court's determination to grant the Plaintiff's request for admissions and deem admitted the items concerned in Plaintiff's Exhibit P-6, which are the request for admissions of June 27, 2002, which would admit the accuracy in regard to the sum of $363,593.56. (Appendix p. 114)

22. During the trial of the Lincoln General Litigation, Lincoln General introduced into evidence documents identified as "Plaintiff's Requests for Admissions Directed to Defendants," and introduced as "P-6." (Appendix p. 284-290)

23. The Lincoln General Litigation Exhibit "P-6" contains requests for admission numbered one through seventeen and each explicitly pertains to a transaction between Personal Surplus Lines, Inc. and Lincoln General Insurance Company. (Appendix p. 284-290)

24. The Lincoln General Litigation Exhibit "P-6" does not pertain to any transaction between Scaramuzza and Lincoln General Insurance Company. (Appendix p. 284-290)

25. During the trial of the Lincoln General Litigation, the plaintiff, Lincoln General failed to introduce any evidence against Scaramuzza to sustain the allegations contained in Count III of the complaint.

26. During the trial of the Lincoln General Litigation, the plaintiff, Lincoln General, failed to introduce any evidence against Scaramuzza to sustain the allegations contained in Count V of the complaint.

27. During the trial of the Lincoln General Litigation, the plaintiff, Lincoln General, failed to introduce any evidence that Exhibit "P-6," relating to requests for admission of transaction between Lincoln General Insurance Company and Personal Surplus Lines, Inc. related to any debt alleged owed by Scaramuzza to Lincoln General Insurance Company.

28. Sciolla filed a post-trial motion, but Sciolla failed to assert that Lincoln General had failed to introduce any evidence to sustain the allegations contained in Count Three of the complaint. A copy of the post-trial motion is attached as Exhibit Four. (Appendix p. 352-357)

29. Sciolla filed an amended post-trial motion, but Sciolla failed to assert that Lincoln General had failed to introduce any substantive evidence to sustain the allegations contained in Count Three of the complaint. A copy of the amended post-trial motion is attached as Exhibit Five. (Appendix p. 358-367)

30. Sciolla filed a post-trial motion, but Sciolla failed to assert that Lincoln General had failed to introduce any substantive evidence to sustain the allegations contained in Count Five of the complaint. A copy of the post-trial motion is attached as Exhibit Four. (Appendix p. 352-357)

31. Sciolla filed an amended post-trial motion, but Sciolla failed to assert that Lincoln General had failed to introduce any substantive evidence to sustain the allegations contained in Count Five of the complaint. A copy of the amended post-trial motion is attached as Exhibit Five. (Appendix p. 358-367)

32. Sciolla filed a "Brief in Support of their Motion for New Trial" in which Sciolla stated: "The relationship between the Plaintiff, Lincoln General Insurance Company, and the Defendant, Personal Surplus Lines, Inc., was based on a contract that has been accepted as P-1 and D-1, along with a Guaranty by Defendant, Pasquale Scaramuzza."  See Exhibit Five, Brief, first page.  (Appendix p. 363)

33. The Guaranty referred to Sciolla states: "Whereas to induce LGIC to enter said Brokerage Agreement (hereinafter referred to as the 'Agreement') Personal Surplus Lines, Inc. (hereinafter referred to as 'Guarantor') has agreed to guarantee the faithful performance of all the terms and conditions of the Brokerage Agreement."  See  Exhibit Two, Exhibit D, first page.  (Appendix p. 29)

34. According to the explicit terms of the Guaranty, Personal Surplus Lines, Inc. was the guarantor, not Scaramuzza. (Appendix p. 29)

35. Sciolla failed to understand, comprehend, and argue that Personal Surplus Lines, Inc. was the guarantor, not Scaramuzza.

36. Sciolla filed a post-trial motion and an amended post-trial motion, but Sciolla failed to assert that the Plaintiff's Exhibit "P-6," relating to requests for admission, pertained only to Lincoln General Insurance Company and Personal Surplus Lines, Inc. and not Scaramuzza. (Appendix p.  352-367)

37. By Order dated May 7, 2003, the Court of Common Pleas of Montgomery County entered a revised judgment against Scaramuzza in the amount of $477,556.12.  A copy of the Order is attached as Exhibit Six.  (Appendix p. 368)

38. As a result of the Order dated May 7, 2003, a judgment has been filed against Scaramuzza making personally and individually liable for the payment of $477,556.12, plus interest to Lincoln General Insurance Company.

## COUNT ONE
## SCARAMUZZA V. SCIOLLA
## LEGAL MALPRACTICE

39. All of the allegations of the complaint are incorporated.

**ELEMENT ONE: EMPLOYMENT OF THE ATTORNEY**

40. Scaramuzza hired and retained Sciolla and Jaffe Friedman to represent Scaramuzza in the Lincoln General Litigation, thus forming the attorney/client relationship.  Exhibit One. (Appendix p. 2-3)

41. Pursuant to the attorney/client relationship thus formed, Sciolla consulted and advised Scaramuzza regarding the Lincoln General Litigation and Sciolla filed legal papers on behalf of Scaramuzza.

**ELEMENT TWO: THE FAILURE OF THE ATTORNEY TO EXERCISE ORDINARY SKILL AND KNOWLEDGE**

42. Sciolla failed to assert that Scaramuzza had no personal liability for the debts of Personal Surplus Lines, Inc. by omitting to introduce evidence during the trial that Scaramuzza was an employee of Personal Surplus Lines, Inc. and was not responsible for the corporate debts of Personal Surplus Lines, Inc.

43. Sciolla failed to assert that Scaramuzza had no personal liability for the payment of any debt to Lincoln General because the express, written contracts between Lincoln General and Personal Surplus Lines, Inc. did not include Scaramuzza as a party.

44. During the trial of the Lincoln General Litigation, Sciolla failed to move the Court for a compulsory nonsuit/directed verdict as a result of the failure of Lincoln General to introduce

any evidence against Scaramuzza to sustain the allegations contained in Count III of the complaint.

45. During the trial of the Lincoln General Litigation, Sciolla failed to move the Court for a compulsory nonsuit/directed verdict as a result of the failure of Lincoln General to introduce any evidence against Scaramuzza to sustain the allegations contained in Count V of the complaint.

46. Sciolla filed a post-trial motion, but Sciolla failed to assert that Lincoln General had failed to introduce any substantive evidence to sustain the allegations contained in Count Three of the complaint.

47. Sciolla filed an amended post-trial motion, but Sciolla failed to assert that Lincoln General had failed to introduce any substantive evidence to sustain the allegations contained in Count Three of the complaint.

48. Sciolla filed a post-trial motion, but Sciolla failed to assert that Lincoln General had failed to introduce any substantive evidence to sustain the allegations contained in Count Five of the complaint.

49. Sciolla filed an amended post-trial motion, but Sciolla failed to assert that Lincoln General had failed to introduce any substantive evidence to sustain the allegations contained in Count Five of the complaint.

50. According to the explicit terms of the Guaranty, Personal Surplus Lines, Inc. was the guarantor, not Scaramuzza. (Appendix p. 29-33)

51. Sciolla failed to understand, comprehend, and argue that Personal Surplus Lines, Inc. was the guarantor, not Scaramuzza.

52. Sciolla filed a post-trial motion and an amended post-trial motion, but Sciolla failed to assert that the Plaintiff's Exhibit "P-6" pertained only to Lincoln General Insurance Company and Personal Surplus Lines, Inc. and not Scaramuzza. (Appendix p. 352-367)

53. Sciolla failed to assert that under Pennsylvania law, a written or express contract between Lincoln General Insurance Company and Personal Surplus Lines, Inc. precludes a claim of unjust enrichment asserted personally against Scaramuzza, as set forth in Count V. *First Wisconsin Trust Co. v. Strausser,* 653 A.2d 688, 439 Pa. Super. 192 (1995), Petition for Allowance of Appeal Denied, 739 A.2d 543 (Pa. 06/09/1999) *Gee v. Eberle*, 279 Pa. Super. 101, 420 A.2d 1050 (1980).

**ELEMENT THREE: THAT SUCH NEGLIGENCE WAS THE PROXIMATE CAUSE OF DAMAGE TO THE PLAINTIFF**

54. If Sciolla asserted and substantiated with evidence that Scaramuzza had no personal liability for the debts of Personal Surplus Lines, Inc., Scaramuzza would not have had a judgment entered against Scaramuzza in the amount of $477,556.12.

55. If Sciolla had asserted that Scaramuzza had no personal liability for the payment of any debt to Lincoln General because the express, written contract between Lincoln General and Personal Surplus Lines, Inc. did not include Scaramuzza as a party, Scaramuzza would not have had a judgment entered against Scaramuzza in the amount of $477,556.12.

56. If, during the trial of the Lincoln General Litigation, Sciolla had moved the Court for a compulsory nonsuit/directed verdict as a result of the failure of Lincoln General to introduce any evidence against Scaramuzza to sustain the allegations contained in Count III of the complaint, the Court would have granted the motion and Scaramuzza would not have had a judgment entered against Scaramuzza in the amount of $477,556.12.

57. If, during the trial of the Lincoln General Litigation, Sciolla had moved the Court for a compulsory nonsuit/directed verdict as a result of the failure of Lincoln General to introduce any evidence against Scaramuzza to sustain the allegations contained in Count V of the complaint, controlling Pennsylvania law would have prompted Court to grant the motion and Scaramuzza would not have had a judgment entered against Scaramuzza in the amount of $477,556.12.

58. If Sciolla filed a post-trial motion asserting that Lincoln General had failed to introduce any substantive evidence to sustain the allegations contained in Count Three of the complaint, controlling Pennsylvania law would have prompted Court to grant the motion and Scaramuzza would not have had a judgment entered against Scaramuzza in the amount of $477,556.12.

59. If Sciolla filed a post-trial motion asserting that Lincoln General had failed to introduce any substantive evidence to sustain the allegations contained in Count Five of the complaint, controlling Pennsylvania law would have prompted Court to grant the motion and Scaramuzza would not have had a judgment entered against Scaramuzza in the amount of $477,556.12.

60. According to the explicit terms of the Guaranty, Personal Surplus Lines, Inc. was the guarantor, not Scaramuzza. (Appendix p. 29-33)

61. If Sciolla had understood, comprehended, and argued that Personal Surplus Lines, Inc. was the guarantor, not Scaramuzza, the Court would not have entered judgment against Scaramuzza in the amount of $477,556.12 because Scaramuzza had not legal obligation to pay the debts of Personal Surplus Lines, Inc.

62. If Sciolla has asserted that under Pennsylvania law, a written or express contract between Lincoln General Insurance Company and Personal Surplus Lines, Inc. precludes a claim of unjust enrichment personally against Scaramuzza, *First Wisconsin Trust Co. v. Strausser,* 653 A.2d 688, 439 Pa. Super. 192 (1995), Petition for Allowance of Appeal Denied, 739 A.2d 543 (Pa. 06/09/1999) *Gee v. Eberle*, 279 Pa. Super. 101, 420 A.2d 1050 (1980), controlling Pennsylvania law would have prompted Court to deny any relief under Count Five of the Lincoln General Litigation complaint and Scaramuzza would not have had a judgment entered against Scaramuzza in the amount of $477,556.12.

63. As a direct and proximate cause of Sciolla's failure to exercise ordinary skill and knowledge required of attorneys as set forth in this complaint, a judgment was entered against Scaramuzza in the amount of $477,556.12. (Appendix p. 368)

Wherefore, Pasquale Scaramuzza demands judgment against Anthony J. Sciolla, Jr. in the principal amount of $477,556.12, plus any interest accruing on the Lincoln General Litigation judgment, and further plus costs and interest of this action.

**COUNT TWO**
**SCARAMUZZA v. JAFFE FRIEDMAN**
**LEGAL MALPRACTICE—RESPONDEAT SUPERIOR**

64. All of the allegations of the complaint are incorporated.

65. At all times relevant to the allegations contained in this complaint, Sciolla was an officer, shareholder, employee, or agent of Jaffe Friedman working within the scope of his employment and with the knowledge and consent of the Jaffe Friedman.

66. Jaffe Friedman is liable to Scaramuzza under the doctrine of respondeat superior.

Wherefore, Pasquale Scaramuzza demands judgment against Jaffe, Friedman, Schuman, Sciolla, & Appelbaum, P.C., in the principal amount of $477,556.12, plus any interest accruing on the Lincoln General Litigation judgment, and further plus costs and interest of this action.

## COUNT THREE
## SCARAMUZZA v. JAFFE FRIEDMAN
## LEGAL MALPRACTICE—PROFESSIONAL CORPORATION LAW

67. All of the allegations of the complaint are incorporated.

68. At all times relevant to the allegations contained in this complaint, Sciolla was a officer, shareholder, employee, or agent of Jaffe Friedman working within the scope of his employment and with the knowledge and consent of the Jaffe Friedman.

69. Under Pennsylvania law, Jaffe Friedman, as a professional corporation, shall be liable up to the full value of its property for the acts of any of its officers, shareholders, employees or agents while they are engaged on behalf of the corporation in rendering professional services. See 15 Pa.C.S.A. § 2925(b).

Wherefore, Pasquale Scaramuzza demands judgment against Jaffe, Friedman, Schuman, Sciolla, & Appelbaum, P.C., in the principal amount of $477,556.12, plus any interest accruing on the Lincoln General Litigation judgment, and further plus costs and interest of this action.

Law Office of Edward E. Kopko

_____
Edward E. Kopko, Pa. Supreme Ct. Atty. No. 25582
15 Nottingham Drive
Ithaca, New York 14850
607-269-1300; 607-269-1301 fax
eek@kopkolaw.com
Monday, March 22, 2004