## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PASQUALE SCARAMUZZA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 04-1270 |
| ANTHONY J. SCIOLLA, JR., et al. | : | |

### MEMORANDUM

**Baylson, J.**                                                             **March 3, 2006**

## I.      Introduction

This legal malpractice action arises out of the handling of the defense of underlying

litigation against Plaintiff Pasquale Scaramuzza ("Scaramuzza") by Scaramuzza's trial counsel,

Defendants Anthony J. Sciolla, Jr., Esq. ("Sciolla") and the law firm of Jaffe, Friedman,

Schuman, Sciolla & Applebaum, P.C. ("Jaffe Friedman") (together, "Defendants").  Currently

before the Court is Defendants' Motion for Summary Judgment (Doc. No. 40).  For the following

reasons, the Court will grant Defendants' Motion.

## II.     Factual and Procedural Background

At all relevant times, Scaramuzza was the president, director, and sole shareholder of

Personal Surplus Lines, Inc. ("Personal Surplus"), a company operating in the insurance industry.

Sciolla was a partner in the law firm of Jaffe Friedman.

### A.      The Lincoln General Litigation

#### 1.      Contractual Relationship Among Scaramuzza, Personal Surplus, and Lincoln General

The relevant facts start with the case of <u>Lincoln General Insurance Company v. Personal</u>

-1-

Surplus Lines, Inc. and Pasquale Scaramuzza, (the "Lincoln General Litigation"), No. 98-02859,

in the Court of Common Pleas of Montgomery County, Pennsylvania.  The plaintiff, Lincoln

General Insurance Company ("Lincoln General"), alleged breach of a brokerage agreement with

Personal Surplus, an insurance broker which processed policies written by retail agents, whereby

Personal Surplus agreed to solicit retail brokers and agents' business and bind risks for Lincoln

General's private passenger automobile insurance business in all states where Lincoln General

was licensed to write such insurance.

Under the terms of the brokerage agreement, which was admitted into evidence at trial,

Personal Surplus was responsible for collecting, accounting for, and paying all premiums on the

insurance business that it wrote for Lincoln General, even if it did not collect the premium from

the policy holder.  Premiums collected by Personal Surplus were the property of Lincoln General,

and Personal Surplus held such premiums as a trustee for Lincoln General.  Personal Surplus

could only be relieved of its responsibility to pay premiums to Lincoln General if Personal

Surplus notified Lincoln General within thirty days of the premium billing that it was unable to

collect such premiums.  Scaramuzza signed the brokerage agreement in his official capacity as

President of Personal Surplus.  See Trial Transcript at 12-13.

As an inducement to Lincoln General to enter into the brokerage agreement, Personal

Surplus executed a Guaranty and an Assignment, which were admitted into evidence at trial.

First, the Guaranty specified that "Pasquale J. Scaramuzza, individually" was a broker and "an

agent for Lincoln General Insurance Company."  Defendants' Motion for Summary Judgment,

Exhibit D.  By executing the Guaranty, the corporate entity of Personal Surplus agreed to

guarantee the full performance by agent Scaramuzza of all terms and conditions of the brokerage

agreement.  Id. at 1-4.  At the same time as Personal Surplus executed the Guaranty, Scaramuzza and Personal Surplus executed an Assignment.  It provided that Scaramuzza assigned his right to compensation due from Lincoln General under the brokerage agreement to Personal Surplus, and Personal Surplus agreed to hold Scaramuzza "harmless from any liability arising from the performance or non-performance of said contract."  See Assignment, Plaintiff's Complaint Exhibits at 215.

      2.    The Lincoln General Complaint

Lincoln General included in its Complaint two counts alleging Scaramuzza's personal liability (i.e., Count III on the grounds of breach of fiduciary duty, and Count V for unjust enrichment).  Regarding the alleged breach of fiduciary duty, Lincoln General claimed that Scaramuzza owed a fiduciary duty to Lincoln General with respect to the premiums for the business that he obtained for Lincoln General.  In breach of this fiduciary duty, Scaramuzza allegedly failed or refused to hold unearned premiums in trust or to return unearned premiums to insurance premium finance companies.  Lincoln General further alleged that Scaramuzza failed to return unearned premiums in order to receive interest on the retained money.  Regarding the unjust enrichment count, Lincoln General claimed that Personal Surplus and Scaramuzza, acting jointly and severally, had been unjustly enriched by wrongfully withholding gross unearned insurance premiums which belonged to insurance premium companies.

Personal Surplus and Scaramuzza were originally represented by John Prodoehl, Esquire.  However, they became dissatisfied with his services and retained Sciolla and Jaffe Friedman to represent them at trial.

-3-

3.    <u>The Trial</u>

The Lincoln General Litigation was tried without a jury before Judge Moore of the Court of Common Pleas of Montgomery County, Pennsylvania in February of 2003.  The trial lasted less than one day.

Lincoln General called only two witnesses.  First, Lincoln General Executive Vice President and General Manager Gary Orndorff testified as to the business relationship between Personal Surplus and Lincoln General; Personal Surplus' guaranty of Scaramuzza's performance; the details surrounding Personal Surplus' failure to pay Lincoln General outstanding premiums; and the outstanding moneys owed to Lincoln General.  <u>See</u> Trial Transcript at 10-19.  Second, Lincoln General presented the testimony of expert accountant Dennis Houser.  Houser testified as to the nature of his audit; the details of financial reporting of moneys owed to Lincoln General; and the amounts of the outstanding moneys owed to Lincoln General.  <u>See</u> Trial Transcript at 25-36.  Cross-examination of these witnesses was limited in substantial part to (1) the technical details of the financial reporting of moneys owed to Lincoln General, and (2) whether the data supplied to Mr. Houser and upon which he based his conclusions was flawed.  <u>See</u> Trial Transcript at 20-24; 36-53.

Following that testimony, there was considerable discussion about Defendants' failure to respond to Lincoln General's requests for admission – which failure Mr. Sciolla attributed to former counsel John Proedohl.  Lincoln General moved for the Court to admit its requests for admissions and, due to lack of response, deem admitted the items concerning the accuracy of the amount of moneys owed to Lincoln General.  <u>See</u> Trial Transcript at 58-84.  After the Plaintiff rested, Defendants did not make any motions of any kind.

-4-

Defendants offered the testimony of Mr. Scaramuzza.  Scaramuzza testified as to the nature of Personal Surplus' business; Personal Surplus' relationship to Lincoln General; and the relevant premium collection and reporting processes.  Scaramuzza testified at length as to why he believed the results of Mr. Houser's accounting calculations were incorrect (stating the belief, in essence, that Lincoln General had not followed proper recording procedures and had provided Mr. Houser with incorrect figures).  See Trial Transcript at 85-109.  At one point, Scaramuzza admitted he would be personally liable if his customers did not pay Personal Surplus.

> Q.   What happens to the funds that have been paid in at that point?
>
> A.   Well, if all we received as 15%, there is not enough money there to pay anything.  If I received $1,000 of the $2,000, let's say, I would have to send 85% of that $1,000 up to Lincoln, and I would also have to pay – even though I did not collect the money, I would also have to pay an additional $850, because it was on their sheets.
>
> Q.   That the policy was $2,000?
>
> A.   That's correct, so that means I'm out $850 at that point in time.
>
> Q.   How is that made up?
>
> A.   At some point in time, hopefully they cancelled the policy and then they would issue me a credit.  However, they paid me in credits, I paid them in check.

See Trial Transcript at 96-97.

Cross-examination of Scaramuzza discussed the agreements that bound Personal Surplus to pay premium amounts to Lincoln General.  See Trial Transcript at 110-123.[1]

---

[1] Scaramuzza also presented very brief and marginally relevant testimony from Mr. Lee Krinksy, a marketing manager with Arizona Premium Finance Company, who testified, in

There was limited evidence or argument presented at trial on the issue of Scaramuzza's personal liability or Scaramuzza's status as an agent of Lincoln General. Lincoln General's Trial Memorandum referenced the Guaranty dated May 30, 1985 obligating Personal Surplus to Lincoln General. At the outset of the trial, Lincoln General's counsel was asked by the court, "Are you pursuing the corporation and the individual at this point," and she responded: "Yes, because there were guaranties between the two." See Trial Transcript at 4-5. Later, it established that Personal Surplus had signed a Guaranty for performance of the obligations of the brokerage agreement by Scaramuzza individually as an agent of Lincoln General Insurance Company. In addition, Mr. Orndorff testified that "[u]nder the terms of [the brokerage agreement], the agent is responsible for all earned premiums, whether they collect it or not, to the company." See Trial Transcript at 18-19.

    4.    The Judgment

Judge Moore took the matter under advisement and later found in favor of Lincoln General. After the adverse verdict, Sciolla and Jaffe Friedman filed an amended post-trial motion on behalf of their client, but did not argue that Lincoln General failed to advance sufficient evidence to sustain the allegations brought against Scaramuzza individually. By an order dated

---

essence, to the "ongoing relationship of how Arizona Premium was paid on a timely basis" by Personal Surplus and the use of "net-in, net-out" accounting. See Trial Transcript at 136-142. It is relevant to note that the Brokerage Agreement dated May 30, 1995, Exhibit C to Defendants' Motion for Summary Judgment, is between Lincoln General and Personal Surplus and is signed by Scaramuzza on behalf of Personal Surplus. This agreement does not contain any personal obligation by Scaramuzza. The Guaranty is also dated May 30, 1995, Exhibit D to Defendants' Motion for Summary Judgment, but is between Scaramuzza, individually, defined as "broker," and Lincoln General, and as noted in the text above, obligates Personal Surplus to guarantee the performance of Scaramuzza as broker. Although this document does not specifically obligate Scaramuzza individually, its entire premise is based on the fact, which was established by the evidence referenced in the text above, that Scaramuzza had personal liability to Lincoln General.

May 7, 2003, Judge Moore entered a final Amended Judgment against both Personal Surplus and

Scaramuzza individually in the amount of $477,556.12 (representing the outstanding moneys

owed plus substantial interest).  There was no opinion by Judge Moore.  There was no appeal.

To this date, neither Personal Surplus nor Scaramuzza have satisfied the judgment.[2]

### B.    The Malpractice Action Against Sciolla and Jaffe Friedman in this Court

Scaramuzza subsequently brought this legal malpractice action against Sciolla and Jaffe

Friedman.[3]  Scaramuzza seeks to recover from Sciolla and Jaffe Friedman the amount for which

Scaramuzza is liable pursuant to the Lincoln General Litigation.

In short, the Complaint asserts that Defendants committed malpractice by failing to argue

in post-trial motions that Lincoln General did not advance sufficient evidence to sustain the

allegations brought against Scaramuzza personally.  Sciolla filed a "Brief in Support of [the

Defendants'] Motion for New Trial," in which he wrote: "The relationship between [Lincoln

---

[2] The parties appear to be in disagreement about Scaramuzza's intent to pay the judgment.
Defendants posit that Scaramuzza is unable to pay and does not intend to pay any part of the
judgment.  Scaramuzza, on the other hand, maintains that he plans to pay the judgment when
able.

[3] At the same time that Scaramuzza brought suit against Sciolla and Jaffe Friedman in
Montgomery County, Scaramuzza and Personal Surplus brought a malpractice action against
John Prodoehl, Esq., in the Court of Common Pleas for Delaware County.  The allegation against
Prodoehl is based upon Prodoehl's failure to timely and properly answer requests for admission
in the underlying Lincoln General Litigation.  When this action advanced in federal court,
Scaramuzza was removed as an individual plaintiff from the action against Prodoehl, and that
case proceeded with Personal Surplus as the sole plaintiff.  The Prodoehl action is still pending,
and the damages demanded by Personal Surplus are the amount of the Lincoln General Litigation
judgment ($477,556.12) plus interest – the same damages which form the basis for the case sub
judice.
Were this Court inclined to deny Defendants' motion and allow the instant case to
proceed to trial, the Court would need to examine the question of a potential double recovery
based on the damages claimed in the Prodoehl state court action.  Because the Court will grant
Defendants' Motion, however, there is no need to reach this issue.

General and Personal Surplus] was based on a contract that has been accepted [into evidence],

along with a Guaranty by [Scaramuzza]."  The Guaranty to which Sciolla referred states:

> Whereas to induce [Lincoln General] to enter said Brokerage
> Agreement (hereinafter referred to as the 'Agreement') Personal
> Surplus Lines, Inc. (hereinafter referred to as 'Guarantor') has
> agreed to guarantee the faithful performance of all the terms and
> conditions of the Brokerage Agreement.

In his malpractice Complaint, Scaramuzza argues that according to the explicit terms of the

Guaranty, Personal Surplus – and not Scaramuzza – was the guarantor, a fact that Sciolla

allegedly failed to understand or comprehend.

In this Court, the parties subsequently stipulated to 1) the existence of the attorney-client

relationship between Scaramuzza and Defendants, 2) the standard of care applicable to

Defendants, and 3) the breach of that standard of care by Defendants.[4]

---

[4] The Stipulation reads, in pertinent part:

> 6.  During the trial of the Lincoln General Litigation, Sciolla did
> not move the Court for a compulsory nonsuit/directed verdict
> based on the contention that Lincoln General failed to introduce
> any evidence against Scaramuzza to sustain the allegations
> contained in Count III and Count V of the complaint.
> 7. Sciolla filed a post-trial motion, but Sciolla did not assert that
> Lincoln General had failed to introduce any substantive evidence to
> sustain the allegations contained in Count III and Count V of the
> complaint.
> 8. Sciolla filed an amended post-trial motion, but Sciolla did not
> assert that Lincoln General had failed to introduce any substantive
> evidence to sustain the allegations contained in Count III and
> Count V of the complaint.
> 9. By virtue of the attorney/client relationship existing between
> Scaramuzza and Jaffe Friedman and Sciolla, the standard of care
> required Jaffe Friedman and Sciolla to move the Court for a
> compulsory nonsuit/directed verdict based on the contention
> Lincoln General failed to introduce any evidence against
> Scaramuzza to sustain the allegations contained in Count III and
> Count V of the complaint.

C.    **Dispositive Motions**

Following a prolonged and contentious discovery period (during which the Court issued several discovery orders), the parties each moved for summary judgment.

In Plaintiff's Motion for Summary Judgment, Scaramuzza contended that the record can support no conclusion other than that the Defendants' admitted negligence was the proximate cause of Scaramuzza's being found liable.  He asserted, due to the lack of evidence to sustain the counts against Scaramuzza individually, there would have been no possible result other than judgment in favor of Scaramuzza as an individual if Defendants had acted within their duty of care.  In other words, Scaramuzza asserted that if Sciolla had moved for nonsuit, the judge would have granted it.  In support of his motion, Scaramuzza attached an unsworn expert report, in which Professor Larry Bocchino opined that "a Motion for Nonsuit or Motion for a Directed Verdict, timely made, would, on any reading of the transcript, have resulted in the granting of

---

10. By virtue of the attorney/client relationship existing between Scaramuzza and Jaffe Friedman and Sciolla, the standard of care required Jaffe Friedman and Sciolla to move the Court to dismiss the claims set forth in Count III and Count V by filing post-trial motions based upon the contention Lincoln General failed to introduce any substantive evidence to sustain the allegations contained in Count III and Count V of the complaint.

11. Jaffe Friedman and Sciolla deviated from the standard of care by not moving the Court for a compulsory nonsuit/directed verdict based upon the contention Lincoln General failed to introduce any evidence against Scaramuzza to sustain the allegations contained in Count III and Count V of the complaint.

12. Jaffe Friedman and Sciolla deviated from the standard of care by not moving the Court to dismiss the claims set forth in Count III and Count V by filing post-trial motions based upon the contention Lincoln General failed to introduce any substantive evidence to sustain the allegations contained in Count III and Count V of the complaint.

See Joint Stipulation Regarding Standard of Care filed July 29, 2005 (Doc. No. 39).

either motion, thereby relieving Mr. Scaramuzza of liability for the judgment against him that was obtained by [Lincoln General]." <u>See</u> Bocchino Expert Report at 5.[5]  Scaramuzza asserts that this opinion conclusively establishes that he would have prevailed "but for" Defendants' failures, and that Defendants' conduct was therefore the proximate cause of Scaramuzza's injury.

In Defendants' Motion for Summary Judgment, Sciolla and Jaffe Friedman contended that Scaramuzza had failed to adduce any record evidence establishing that Scaramuzza would have succeeded in the underlying litigation but for the negligence of Defendants (<u>i.e.</u>, that the state court entered judgment against Scaramuzza for no reason other than the omissions of the Defendants).  Defendants asserted the evidence was sufficient to find Scaramuzza liable, and that if a motion a nonsuit had been filed, it would have been denied.

In support of their position, Defendants relied in part on answers provided by Scaramuzza to Defendants' Contention Interrogatories – namely, those stating that "plaintiff has no obligation to speculate regarding the outcome of the Lincoln General litigation if the defendants had conformed to their conduct to professional standards. . . ."  More specifically, Defendants argued that (1) Lincoln General produced sufficient evidence – <u>e.g.</u>, the Guaranty – to provide a basis for imposing judgment against Scaramuzza individually, and (2) there is nothing in the record of the underlying trial to support Scaramuzza's claim that if his counsel had moved for him to be dismissed individually the court would have granted that relief.

Finally, Defendants posited that Scaramuzza has not met his burden to prove recoverable

---

[5]The expert report was unsworn and under Third Circuit law was insufficient to create an issue of fact.  <u>Fowle v. C & C Cola</u>, 868 F.2d 59, 67 (3d Cir. 1989) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158 b.17 (1970); Fed R. Civ. P. 56(e)).  Nonetheless, as the discussion below shows, even if the expert report were considered on the merits, it would be insufficient to warrant relief for the Plaintiff.

damages because he has not paid the judgment rendered in the underlying action.

The Court held oral argument concerning the parties' cross-motions for summary judgment on November 7, 2005.  The parties reiterated their basic positions.  Regarding the above-referenced interrogatory answers relied upon by Defendants, Scaramuzza argued that they were provided early in the discovery period, and requested leave to amend his relevant answers to more directly respond to the question of the existence of proximate cause.  In an Order dated November 8, 2005, (Doc. No. 57), the Court granted Scaramuzza leave to amend his answers to Defendants' Contention Interrogatories in more detail (including citations), and requested supplemental briefing from the parties.  Scaramuzza thereafter averred in supplemental interrogatory responses that "if Jaffe Friedman and Sciolla had made appropriate, timely motions during and after trial, the state court would have dismissed Counts III and V against Scaramuzza and with the dismissal, no basis would have existed for imposing a judgment against Scaramuzza personally."  As discussed below, the court finds this answer was conclusory and failed to delineate relevant facts and law, as the Order of November 8, 2005 required.[6]

After careful consideration of the parties' supplemental briefing, the Court issued an Order dated December 30, 2005 (Doc. No. 65).  The Court concluded that under Pennsylvania law, Scaramuzza must prove that he would have prevailed in the underlying action in the absence of Defendants' negligence, and stated that the expert report alone is not a sufficient or proper basis for summary judgment.  Accordingly, the Court denied Plaintiff's Motion for Summary Judgment.  The Court, however, agreed to consider the expert report as a part of his briefing in

---

[6]The Court also denied Plaintiff's motion to amend his complaint to add categories of damages because the discovery period had closed, and it was simply too late in the litigation to reopen discovery on new factual claims that could have been raised much earlier in the litigation.

opposition to Defendant's Motion for Summary Judgment.  In addition, the Court ordered

supplemental briefing on the issue of whether this Court may determine, as a matter of law,

whether Scaramuzza would have been successful in the underlying litigation if Scaramuzza's

trial counsel had not been negligent.

In the supplemental briefing, Defendants argue that (1) the Court can determine as a

matter of law whether or not Scaramuzza would have been found liable in the underlying

litigation if Defendants' had not been negligent, and (2) Scaramuzza would indeed have been

found individually liable by a reasonable factfinder even if Defendants had not been negligent,

because the evidence presented during the underlying action established that Scaramuzza was

individually liable to Lincoln General.  In a response lacking of record citations, Scaramuzza

decries those conclusions as "specious" and "disingenuous," and contends that absolutely

nothing in the record of the underlying case supports the contention that Scaramuzza was

individually liable.[7]

## III.    **Jurisdiction**

The Court has jurisdiction over Scaramuzza's complaint pursuant to 28 U.S.C. §

1332(a)(1).  Scaramuzza is a resident of Florida.  Sciolla and Jaffe Friedman are residents of

Pennsylvania.  The amount in controversy exceeds $75,000.  Venue is appropriate under 28

U.S.C. § 1391(a).

---

[7] Scaramuzza also devotes multiple pages to a new, highly dubious argument that
Defendants are liable simply on the basis of application of the doctrine of res ipsa loquitor.
Under Pennsylvania case law, however, there is no valid res ipsa loquitor theory of legal
malpractice, see, e.g., Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985); Thompson v. Glenmede
Trust Co., 1996 U.S. Dist. LEXIS 16248, *15 (E.D. Pa. 1996).  Scaramuzza therefore cannot rely
upon this argument to overcome Defendants' Motion for Summary Judgment.  Accordingly, the
Court will not address this argument any further in this Memorandum.

This diversity action is governed by substantive Pennsylvania state law.  When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are the authoritative source.  See State Farm Mut. Auto. Ins. Co. v. Coviello, 233 F.3d 710, 713 (3d Cir. 2000).  If the Pennsylvania Supreme Court has not yet passed on an issue, then this court will consider the pronouncements of the lower state courts.  Id.

**IV.**    **Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  After the moving party has met its initial burden, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing

"sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

**V.    Discussion**

To succeed on a claim of legal malpractice, a plaintiff must demonstrate all of the following three basic elements:

1)  employment of an attorney or other basis for duty;

2)  the failure of the attorney to exercise ordinary skill and knowledge; and

3)  that such negligence was the proximate cause of damage to the plaintiff.

Kituskie v. Corbman, 552 Pa. 275, 714 A.2d 1027, 1029 (Pa. 1998).  As discussed supra, the parties have stipulated to the first and second elements.

Regarding the third prong, a plaintiff must prove that "but for" the attorney's alleged error, the plaintiff would not have been harmed.  See Duke & Co. v. Anderson, 275 Pa. Super. 65, 74, 418 A.2d 613, 618 (Pa. Super. 1980) (stating that it is the plaintiff's burden to establish that, "but for the negligence complained of, the client would have been successful in the prosecution or defense of the action in question"); Myers v. Siegle, 2000 Pa. Super. 136, 751 A.2d 1182, 1185 (Pa. Super. 2000) ("[T]o prove actual injury, appellant must demonstrate that she would have prevailed in the underlying action in the absence of appellees' negligence."); Trauma Serv. Group, P.C. v. Hunter, MacLean, Exley & Dunn, P.C., 2000 U.S. Dist. LEXIS 3712 (E.D. Pa. 2000) ("[O]ne of the elements a plaintiff must prove in bringing a legal malpractice claim is . . . that he would have prevailed in the underlying action but for the

-14-

attorney's negligence.").  A wealth of case law supports this basic principle.  See Attorney's Liability for Negligence in Preparing or Conducting Litigation, 45 A.L.R.2D 5 (2006).

In order to grant summary judgment to Defendants, therefore, the Court must determine, as a matter of law, that Scaramuzza would have been found individually liable in the underlying litigation even if Defendants had not been negligent.  Stated conversely, the Court must deny Defendant's motion if it concludes that Scaramuzza could not have been found individually liable if Defendants had met their standard of care and brought an appropriate post-trial motion.

### A.    Deciding a "Case Within a Case"

As a threshold matter, the Court must determine whether it may properly decide as a matter of law at the summary judgment stage whether Defendants' breach of duty was the "but for" cause of Scaramuzza's individual liability, or whether this disputed issue must be submitted to a jury.  Although the U.S. Court of Appeals for the Third Circuit has not expressly ruled on this question, the Court finds persuasive authority sufficiently establishes that this Court may decide the issue itself.

A legal malpractice lawsuit arising out of the conduct of underlying litigation involves a "case within a case."  See, e.g., Graham v. Liberty Mut. Group, 1998 U.S. WL 961376 (E.D. Pa. 1998) (holding that the proceeds of a legal malpractice claim are subject to subrogation under the Pennsylvania Workers Compensation Act, "The Supreme Court of Pennsylvania recently explained that a legal malpractice action is 'distinctly different from any other type of lawsuit brought in the Commonwealth' because it 'requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving

a 'case within a case')." ) (citing <u>Kituskie v. Corbman</u>, 714 A.2d 1027, 1030 (Pa. 1998)).

In order to determine whether counsel was negligent, the underlying litigation must be replicated via a careful review of the record of the underlying trial.  In this case, where the relevant underlying proceeding was decided by a court sitting without a jury, then the "case within a case" of the legal malpractice action should also be decided by a court rather than a jury. The Court finds this appropriate in the present case where the facts of the underlying trial were not in serious dispute, and Scaramuzza's personal liability was presented as an issue of law, but also not disputed under all of the testimony.  Although not binding authority, a well-reasoned explanation of this doctrine is found in <u>Harline v. Barker</u>, 912 P.2d 433, 440 (Utah 1996).  In <u>Harline</u>, the court rejected the contention that only a jury sitting in the malpractice action should decide what a reasonable judge should have done in the underlying suit.  Rather, the court emphatically concluded:

> We see no reason why a malpractice plaintiff should be able to bootstrap his way into having a lay jury decide the merits of the underlying 'suit within a suit' when . . . only an expert judge could have made the underlying decision.  It is illogical, in effect, to make a change in the law's allocation of responsibility between judge and jury in the underlying action when that action is revisited in legal malpractice actions and thereby distort the 'suit within a suit' analytic model.  To so proceed ignores and, in some cases, contradicts the public policy goals which prompted the initial assignment of decision-making authority respectively to judges and to juries on specific issues. There is no basis for abrogating those public policy goals simply because the matter arises in a legal malpractice context.  Nor do we agree with the implication . . . that a judge sitting in a malpractice case would be any less objective than a jury in determining what a reasonable judge should have done in the underlying case.  We simply do not see the logical connection between ensuring an objective determination of how the underlying case should have come out and the identity of the arbiter who makes that objective determination.

Harline, 912 P.2d at 440.

Federal court decisions are in accord with this principle.  Recently, for example, Judge Caldwell in the Middle District of Pennsylvania concluded that a decision which the court in the underlying action would have made (i.e., concerning ruling on a motion for judgment as a matter of law, had such motion been properly brought), was appropriately an issue for the court in the legal malpractice action.  See Harsco Corp. v. Kerkam, Stowell, Kondracki & Clark, P.C., 965 F. Supp. 580, 584 (M.D. Pa. 1997) (granting summary judgment for defendants on the issue of proximate cause after finding that plaintiff cannot prevail on an essential element of its legal malpractice claim because it can not show the defendant's procedural error was a proximate cause of the verdict against it in the underlying trial, and therefore concluding that "since [the] motion [at issue] presents a question of law, we will simply review it ourselves under the applicable legal principles to see if it would have been granted if there had been no . . . difficulties").  See also, e.g., Ocean Ships, Inc. v. Stiles, 315 F.3d 111, 118 (2d Cir. 2002) (where the issue was whether, but for the defendant's failure to perfect an appeal, an appeals court would have reversed a legal ruling concerning jurisdiction, stating that "what is required is that the judge determine what the appellate court would have done, using the same standards that the appellate court would have applied.")[8]

---

[8] The Court notes that in his supplemental briefing, Scaramuzza does not dispute these guiding principles.  Rather, Scaramuzza posits that "the standard of care in a professional malpractice action is a question of fact" which, the Court infers, Scaramuzza believes the Court should submit to a jury.  The Court is not persuaded, because the parties have already stipulated to the standard of care and the breach of that standard by Defendants.  The standard of care is therefore not a disputed factual issue.  As discussed above, the determination bearing upon the relevant question of proximate cause is one that would have been decided exclusively by the court in the underlying action in response to a motion for directed verdict if it had been made during the trial and/or in a post-trial motion.

-17-

Here, the breach of duty by Defendants was the failure to file an appropriate post-trial motion that would have, if granted, relieved Scaramuzza of individual liability.  That motion for judgment as a matter of law or "nonsuit" would clearly have been decided by the judge in the underlying action.  In this malpractice action, therefore, this Court may properly consider the "case within a case" and decide if Scaramuzza would have been held not individually liable in the underlying action if defendants had moved for nonsuit on the basis of insufficient evidence. If the answer is "yes," then Defendants' Motion for Summary Judgment must be denied.  If the answer is "no," Defendants' Motion for Summary Judgment must be granted.

    **B.**       **Scaramuzza's Potential Individual Liability**

Generally speaking, granting a motion for nonsuit is proper only if, viewing the evidence in the light most favorable to the plaintiff, and then giving the plaintiff the benefit of all reasonable inferences arising from that evidence, the court determines that a factfinder could not reasonably conclude that the disputed element(s) of the cause of action had been established. Duke & Co. v. Anderson, 275 Pa. Super. 65, 66, 418 A2d 613, 614 (Pa. Super. 1980) (citing Watkins v. Sharon Aerie No. 327 F. O. E., 423 Pa. 396, 223 A.2d 742 (Pa. 1966); Herman v. Horst, 255 Pa. Super. 232, 234, 386 A.2d 594, 595 (Pa. Super. 1978)).

Accordingly, the question before the Court is whether, based on the record of the underlying trial, the judge properly concluded that Scaramuzza was subject to individual liability, or, if a motion for nonsuit had been made, would have had to grant the motion for nonsuit.  As discussed above, Defendants contend that there is evidence in the trial record sufficient to confer individual liability on Scaramuzza regardless of Defendants' negligence (i.e., even if Defendants had properly moved for nonsuit).  In return, Scaramuzza relies on the expert report which

-18-

concludes that Defendants' motion, if made, would have been granted.

After a thorough review of the record, the Court finds that there was competent evidence introduced during the underlying trial that tends to establish Scaramuzza, individually, was an agent of Lincoln General.  The Guaranty to the Brokerage Agreement (both of which documents were admitted into evidence) executed by Personal Surplus and Lincoln General explicitly recognized that "Pasquale J. Scaramuzza, <u>individually</u>" was a broker and "an <u>agent</u> for Lincoln General Insurance Company."  Defendant's Motion for Summary Judgment, Exhibit D (emphasis added).  The trial judge was clearly aware that, on this basis of the Guaranty, Lincoln General was pursuing a judgment against Scaramuzza individually: indeed, the judge explicitly asked Lincoln General's counsel whether she was "pursuing the corporation and the individual at this point," and counsel responded "yes, because there were guaranties between the two."  <u>See</u> Trial Transcript at 4-5.

By executing the Guaranty, the corporate entity, Personal Surplus, agreed to guarantee the full performance by individual agent Scaramuzza of all terms and conditions of the brokerage agreement.  In return for executing the Guaranty, Scaramuzza and Personal Surplus also executed an Assignment.  Plaintiff's Complaint Exhibits at 215.  It provided that Scaramuzza assigned his right to individual compensation due from Lincoln General under the brokerage agreement to Personal Surplus, and Personal Surplus agreed to hold Scaramuzza harmless from any liability arising from the performance or non-performance of the brokerage agreement.  Indeed, even Scaramuzza's own expert report acknowledges that "[t]he Guaranty agreement clearly sets out that [Personal Surplus] is guarantor for the performance of the agreement <u>by Mr. Scaramuzza</u>."  <u>See</u> Bocchino Expert Report at 4-5 (emphasis added).

-19-

The record thus tends to establish that Scaramuzza fulfilled dual roles: for corporate and managerial purposes, he served as President of Personal Surplus, and insurance sales purposes, he served, individually, as an agent for Lincoln General.  Evidence in the record also established that liability for the premiums rests with the agent:  Lincoln General CFO Gary Orndorff unambiguously testified that "[u]nder the terms of [the brokerage agreement], the agent is responsible for all earned premiums, whether they collect it or not, to the company."  See Trial Transcript at 18-19.  The mere fact that Scaramuzza was also President of Personal Surplus, the agency through which he happened to conduct business, does not, by itself, insulate Scaramuzza from individual liability.  Indeed, these contracts do not, as Scaramuzza appears to suggest, even absolve Scaramuzza of individual liability to Personal Surplus; rather, they merely provided agent Scaramuzza with possible means of reimbursement from Personal Surplus to the extent of any potential individual liability for non-performance of obligations to Lincoln General.

As an individual agent of Lincoln General, Scaramuzza owed a fiduciary obligation to Lincoln General.  This duty included, as a matter of law, the obligation to account for and remit to Lincoln General funds representing premium payments.  Nat'l Bank v. Ins. Co., 104 U.S. 54, 70-71 (1881).  In Pennsylvania, every insurance agent and broker is made specifically responsible in a fiduciary capacity for all funds received or collected as insurance agent or broker.  See, e.g., In Re McCormick, 70 B.R. 49, 50 (Bankr. W.D. Pa. 1987) (finding a person who was an individual agent for an insurance company and the president of his insurance agency individually liable for collected funds even if his actions were taken for the benefit of the insurance agency of which he was president).  Accordingly, any failure by Scaramuzza individually to account for and remit the funds representing premiums due Lincoln General was potentially a breach of

Scaramuzza's fiduciary duty and a source of individual liability.

**C.      Scaramuzza's Arguments to the Contrary**

Scaramuzza has failed to demonstrate any persuasive evidence in the underlying trial

record that would definitively excuse Scaramuzza from individual liability.

1.      Expert Report

First, the Court has considered Professor Bocchino's expert report and is not persuaded

that it establishes that Scaramuzza would necessarily have prevailed had Defendants

appropriately moved for nonsuit.  The expert report itself consists of legal conclusions and is not

evidence.  The report is not part of the underlying trial record, and therefore does not control or

dictate the outcome of the Court's determination of the "case within a case," which must be

based on the evidence available to the original factfinder in the underlying action.  Furthermore,

the expert report includes only five sentences related to dispositive motion practice (a large part

of the report is addressed towards a conflict of interest of Defendants' representing both Personal

Surplus and Scaramuzza, a question not presently at issue); it contains merely one conclusory

paragraph which does not provide an explanation of any detail or discuss any specific evidence

admitted at trial.  The expert report plainly contradicts the trial record (See Trial Transcript at 18-

19, 96, discussed above) when it states, "there is simply no evidence of individual liability on the

part of Mr. Scaramuzza to LGIC [Lincoln General] presented by [Lincoln General] in the trial of

this matter."

Finally, the expert report contains conflicting statements that cannot be reconciled

because the report fails to fully address the evidence admitted at trial.  Specifically, although the

expert report summarily concludes that "a Motion for Nonsuit of Motion for a Directed Verdict,

timely made, would, on any reading of the transcript, have resulted in the granting of either

motion, thereby relieving Mr. Scaramuzza of liability for the judgment against him that was

obtained by [Lincoln General]," it also explicitly acknowledges that "[t]he Guaranty agreement

clearly sets out that [Personal Surplus] is guarantor for the performance of the agreement <u>by Mr.</u>

<u>Scaramuzza</u>." The expert report makes not attempt to reconcile such inconsistency. <u>See</u>

Bocchino Expert Report at 4-5 (emphasis added). Due to these concerns, the expert report does

not dictate any specific outcome here.

2.    <u>Other Evidence in the Record</u>

Second, beyond the expert report, Scaramuzza has repeatedly failed to indicate any record

evidence that tends to excuse him from individual liability. This Memorandum has reviewed

above substantial evidence in the record where Lincoln General introduced testimony that

Scaramuzza was individually liable, and Mr. Scaramuzza's own testimony admitted his

individual liability. Nonetheless, Scaramuzza relies primarily on repetition of bare assertions

that lack support or foundation.[9] Even when the Court allowed Scaramuzza to supplement his

original answers to Defendants' interrogatories (<u>i.e.</u>, "Plaintiff has no obligation to speculate

regarding the outcome of the Lincoln General Litigation if the Defendants had conformed their

---

[9] In passing, Scaramuzza also attempts to gain traction out of the fact that his insurance broker license had apparently been revoked. The Court infers that Scaramuzza is arguing that he could not have been an "agent" of Lincoln General unless he was a "licensed agent." The Court is unpersuaded for two reasons. First, the only fact in evidence is that, for some unknown reason, Scaramuzza was not licensed <u>at the time of the underlying trial</u>. The evidence at trial supports a finding that Scaramuzza was licensed at the time he was binding coverage for Lincoln General. Indeed, testimony concerning the reasons surrounding Scaramuzza's suspended license was objected to at trial, and the objection was sustained. Thus, there is no competent evidentiary basis in the underlying trial record for Scaramuzza's argument. Second, Scaramuzza's argument cites no authority and ignores basic principles of agency law.

-22-

conduct to professional standards imposed upon lawyers in Pennsylvania"), Scaramuzza merely restated his unsupported, conclusory mantra (i.e., "if Jaffe Friedman and Sciolla had made appropriate, timely motions during and after trial, the state court would have dismissed Counts III and V against Scaramuzza and with the dismissal, no basis would have existed for imposing a judgment against Scaramuzza personally") without including any record citations or making any attempt to resolve or explain the disparity between his original and supplemental answers.  This is neither sufficient evidence nor persuasive argument.  "A party cannot create a genuine issue of fact sufficient to withstand summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts the party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity."  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999).

### D.    **Summary**

Stated succinctly, (1) the relevant contracts constitute evidence tending to show that Scaramuzza was an individual agent of Lincoln General, and (2) Scaramuzza has failed to demonstrate any persuasive evidence in the underlying trial record that would definitively excuse Scaramuzza from individual liability.  Furthermore, there is no persuasive evidence in this "case within a case" to support Scaramuzza's claims (1) that there was no basis for imposing a judgment against Scaramuzza personally, and (2) that if his counsel had moved for him to be dismissed individually the court would have granted the requested relief.

Accordingly, the Court finds that a reasonable factfinder (i.e., the judge in the underlying action) could therefore conclude from evidence in the record of this "case within a case" that Scaramuzza acted individually as an agent for Lincoln General, owed duties to Lincoln General,

and could be held individually liable to Lincoln General for non-performance of his obligations. Moreover, the Court concludes that Scaramuzza has failed to established, based on record evidence, that the judge in the underlying action would necessarily have granted the motion for nonsuit. Defendants are therefore entitled to a grant of summary judgment.

**VI.**     **<u>Conclusion</u>**

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted.

An appropriate Order follows.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PASQUALE SCARAMUZZA     :   CIVIL ACTION
            :
     v.         :
            :   NO. 04-1270
ANTHONY J. SCIOLLA, JR., et al.    :

## <u>ORDER</u>

AND NOW, this 3rd day of March, 2006, it is hereby ORDERED as follows:

1.  Defendants' Motion for Summary Judgment (Doc. No. 40) is GRANTED.

2.  Plaintiff's Complaint is DISMISSED with prejudice.

3.  The Clerk shall mark this case closed for statistical purposes.

BY THE COURT:

   /s/ MICHAEL M. BAYLSON
   Michael M. Baylson, U.S.D.J.

A:\04-1270, Scaramuzza v. Sciolla et al, Mem and Order Def MSJ.wpd